IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARMEN B. TANTALOS,

**Plaintiff,**

v.

TORO VERDE ENTERPRISES, LLC;
OROVERDE CORP.; UNIVERSAL
INSURANCE COMPANY,

**Defendants.**

CIVIL NO. 22-1023 (RAM)

### OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is codefendants Toro Verde Enterprises, LLC, Oroverde Corp., and Universal Insurance Company's (together, "Defendants") *Motion for Summary Judgment* ("*MSJ*"). (Docket No. 23). For the reasons set forth below, the Court finds that it lacks jurisdiction over this action pursuant to a mandatory and enforceable forum selection clause. Therefore, the *MSJ* is **GRANTED**, and the *Complaint* is **DISMISSED WITHOUT PREJUDICE.**

### I.   FACTUAL AND PROCEDURAL BACKGROUND

On May 26, 2019, plaintiff Carmen B. Tantalos ("Plaintiff") suffered serious injuries while riding The Monster zipline at the Toro Verde Adventure Park in Orocovis, Puerto Rico. Plaintiff attributes her injuries to Toro Verde's failure to properly install

and operate the zipline – particularly the braking mechanisms – as her injuries were caused when she crashed into several items hanging on the end of the zip line at full speed after failing to slow down or stop upon reaching the landing platform.

On January 12, 2022, Plaintiff filed her six-count *Complaint* in this action. (Docket No. 1).[1] Defendants then moved to dismiss the *Complaint*, pointing to a mandatory forum selection clause in the waiver Plaintiff signed before participating in the zipline ride which mandates that such disputes be litigated in the courts of the Commonwealth of Puerto Rico. (Docket No. 11). To support their motion to dismiss, Defendants relied on materials outside the pleadings, including a deposition transcript. Id. Plaintiffs thereafter submitted an opposition to the motion to dismiss, which was supported by affidavits and a deposition transcript. (Docket Nos. 15; 15-1; 15-2; 15-3). The Court found this additional evidence relevant to this dispute, and thus converted Defendants' motion to dismiss to a motion for summary judgment. (Docket No.

---

[1] This is the third time Plaintiff has filed a complaint seeking to recover for these injuries. The first complaint was filed in Civil Case No. 19-1960 in this Court on October 9, 2019. Defendants moved to dismiss that complaint based on the forum selection clause discussed in this Opinion and Order. (Case No. 19-1960, Docket No. 8). Plaintiff thereafter filed a *Notice of Voluntary Dismissal*, which the court granted. (Case No. 19-1960, Docket Nos. 11; 12). Plaintiff then filed a complaint in Case No. AI2020cv00003 before the Puerto Rico Court of First Instance, Aibonito Part. (Docket No. 1 ¶ 47). That case was dismissed without prejudice pursuant to the parties' *Joint Stipulation of Dismissal Without Prejudice*. Id. ¶ 48. The state court judgment stated that the statute of limitations would accrue from the date of its issuance – July 7, 2021. Id. ¶ 49.

22). The parties then submitted additional briefing and exhibits in support of their positions. (Docket Nos. 23; 27; 28; 32).

## II.   STANDARD OF REVIEW

Summary judgment is proper if the movant shows: (1) the absence of a genuine dispute as to any material fact; and (2) entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence about the fact is such that a reasonable jury could resolve the point in favor of" the nonmovant. <u>Alicea v. Wilkie</u>, 2020 WL 1547064, at *2 (D.P.R. 2020) (internal quotation marks and citation omitted). A fact is material only if it can alter the outcome of the suit under the governing law. *See* <u>DLJ Mortg. Cap., Inc. v. Vazquez Perez</u>, 2021 WL 3668241, at *2 (D.P.R. 2021) (internal quotation marks and citation omitted). "The nonmoving party may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." <u>Robinson v. Town of Marshfield</u>, 950 F.3d 21, 24 (1st Cir. 2020) (internal quotation marks and citation omitted).

Local Rule 56 also governs motions for summary judgment in this District. *See* L. CV. R. 56. Per this Rule, a nonmovant must admit, deny or qualify the facts supporting the summary judgment motion by referencing each paragraph of the movant's statement of material facts. <u>Id.</u> Adequately supported facts shall be deemed admitted unless controverted per the manner set forth in the local

rule. *See* <u>Vogel v. Universal Insurance Company</u>, 2021 WL 1125015, at *2 (D.P.R. 2021) (internal quotation marks and citation omitted). Litigants ignore this Rule at their peril. <u>Id.</u>

### III.   FINDINGS OF FACT[2]

To make findings of fact, the Court reviewed Defendants' *Statement of Undisputed Material Facts* ("*SUMF*"), Plaintiff's *Answer to Defendants' SUMF* and her *Reply Statement of Material Facts* ("*RSMF*"), and Defendants' *Answer to Plaintiff's RSMF*. (Docket Nos. 23; 27; 32). After crediting only statements of fact properly supported by the record, uncontroverted, and material to the resolution of the *MSJ*, the Court makes these findings of fact.

1.   On May 26, 2019, Plaintiff went to the Toro Verde Adventure Park in Orocovis, Puerto Rico to participate in the zipline ride named "The Monster." (Docket Nos. 15-1 ¶ 3; 23 ¶ 1; 27 ¶ 1).

2.   Plaintiff was accompanied by her brother, her mother, her five-year-old niece, and a friend. (Docket Nos. 15-1 ¶ 3; 23 ¶ 2; 27 ¶ 1).

3.   Plaintiff's brother paid Plaintiff's admission fees to the Toro Verde Park. (Docket Nos. 15-1 ¶ 4; 15-2 ¶ 3; 27 ¶ 2).

---

[2] Later references to each Finding of Fact in this Opinion and Order are cited as follows: (Fact ¶ __).

4.   After paying the entrance fees, Plaintiff's brother waited
     on a line to get zipline equipment while Plaintiff looked
     after her niece. (Docket Nos. 15-1 ¶ 5; 15-2 ¶ 4; 27 ¶ 3).

5.   Plaintiff's niece was hyperactive and running around the
     property. (Docket Nos. 15-1 ¶ 5; 23 ¶ 11; 23-3 at 11).

6.   While Plaintiff's brother was waiting in the line, a Toro
     Verde employee asked people in that line to sign a document
     on a tablet the employee was holding. (Docket Nos. 15-2
     ¶ 5; 27 ¶ 4).

7.   This document was a release of liability, assumption of
     risk, waiver of claims and indemnification agreement (the
     "Agreement"). (Docket No. 23 ¶ 3).

8.   Each participant had to sign the Agreement before they
     could ride The Monster. (Docket Nos. 15-1 ¶ 8; 15-2 ¶ 7;
     23 ¶ 3).

9.   Plaintiff's brother provided his contact information to
     the Toro Verde employee and signed the Agreement. (Docket
     Nos. 15-2 ¶ 7; 27 ¶¶ 6, 20).

10.  Plaintiff's brother then provided the employee with
     Plaintiff's full name, age, telephone number, email,
     emergency contact, and the date of her tour, which the
     employee entered on the tablet. (Docket Nos. 15-2 ¶ 8; 23
     ¶ 7; 27 ¶ 7).

11.  Page three (3) of the Agreement contained the following
     forum selection clause: "I agree and accept that this
     document, and any claim, suit, litigation or legal
     proceeding related to the same shall be subject to and
     interpreted exclusively in accordance with the laws of the
     Commonwealth of Puerto Rico, and that any such proceeding
     shall be carried out exclusively in the state courts of
     the Commonwealth of Puerto Rico." (Docket Nos. 23 ¶ 5; 23-
     2 at 3).

12.  Once provided by her brother and entered by the employee,
     Plaintiff's information appeared on page three (3) of the
     Agreement, immediately after the forum selection clause.
     (Docket Nos. 23 ¶¶ 7, 12; 23-2 at 3).

13.  While she was watching her hyperactive niece, Plaintiff's
     brother called Plaintiff over to the line to sign the
     Agreement. (Docket Nos. 23 ¶ 11; 23-3 at 11; 27 ¶ 9).

14.  When Plaintiff arrived at the line, the Toro Verde employee
     holding the tablet asked Plaintiff to sign in the
     designated space. (Docket Nos. 15-1 ¶ 8; 15-2 ¶ 10; 27
     ¶ 10).

15.  The employee held the tablet at all times and did not hand
     it to Plaintiff or her brother. (Docket Nos. 15-1 ¶ 12;
     15-2 ¶ 7; 27 ¶ 15).

16.  The employee did not discuss the contents of the Agreement
     with Plaintiff. (Docket Nos. 15-1 ¶ 10; 15-2 ¶ 12; 23 ¶ 14;
     23-3 at 94; 27 ¶ 13).

17.  Just above the space provided in the Agreement for
     Plaintiff's signature, the Agreement stated, in capital
     letters: "BY MY SIGNATURE I CERTIFY THAT I HAVE READ AND
     UNDERSTOOD THIS DOCUMENT IN ITS ENTIRETY. I AM AWARE OF
     THE RISKS I AM ASSUMING AND THE RIGHTS I AM WAIVING, AND I
     ACCEPT THIS AGREEMENT IN ITS ENTIRETY VOLUNTARILY AND
     WITHOUT OBJECTION OR LIMITATION." (Docket Nos. 23 ¶ 13;
     23-2 at 4).

18.  Plaintiff did not read the Agreement. (Docket No. 23-3 at
     59-60).

19.  Plaintiff signed page four (4) of the Agreement in the
     space provided. (Docket Nos. 23 ¶ 6; 23-2 at 4).

20.  Plaintiff signed the Agreement at the direction of, and
     due to her trust in, her brother. (Docket No. 23-3 at 98).

21.  After signing the Agreement, Plaintiff immediately took
     her niece to the restroom. (Docket Nos. 15-1 ¶ 9; 15-2
     ¶ 10; 23 ¶¶ 14, 15; 23-3 at 11; 27 ¶ 11).

22.  The Agreement was in Spanish. (Docket Nos. 23 ¶ 8; 27
     ¶ 18).

23.   Plaintiff understands Spanish. (Docket Nos. 23 ¶ 9; 23-3
      at 4).[3]

24.   Plaintiff did not request an English version of the
      Agreement at any time. (Docket Nos. 23 ¶ 10; 27 ¶ 18).

25.   Plaintiff voluntarily participated in the zipline ride.
      (Docket Nos. 23 ¶ 18; 23-3 at 21).

## IV.   APPLICABLE LAW

In general, contractual forum selection clauses "are *prima
facie* valid and should be enforced unless doing so is shown by the
resisting party to be unreasonable under the circumstances."
Marrero v. Aragunde, 537 F. Supp. 2d 305, 308 (D.P.R. 2008), aff'd,
341 F. App'x 656 (1st Cir. 2009) (citing M/S Bremen v. Zapata Off-
Shore Co., 407 U.S. 1, 10-13 (1972)). To determine the
enforceability of the forum selection clause at issue here, the
Court will apply federal common law. As the First Circuit has
noted, "there is no conflict between federal common law and Puerto
Rico law regarding the enforceability of forum-selection clauses."
Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 16 (1st Cir.
2009) (internal quotation marks and citations omitted). Thus, the

---

[3] The cited portion of the deposition transcript is in Spanish. The translation
is:

    Attorney Prats: Ok. Do you understand Spanish?

    Mrs. Carmen B. Tántalos: Yes.

application of federal common law does not present a conflict of laws issue.

"Federal common law regarding the enforceability of forum-selection clauses ordinarily entails several steps." Rivera v. Kress Stores of Puerto Rico, Inc., 30 F.4th 98, 103 (1st Cir. 2022) (citing Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46-47 (1st Cir. 2014)). First, the Court must determine whether the clause at issue is permissive or mandatory. See Claudio-De Leon, 775 F.3d at 46. Second, the Court must ascertain the clause's scope. Id. at 47. The third and "final step in evaluating the clause involves asking whether there is some reason the presumption of enforceability should not apply." Id. at 48 (internal quotation marks and citation omitted).

**V.   DISCUSSION**

**A. The Forum Selection Clause is Mandatory**

First, the Court must determine the threshold issue of whether the forum selection clause is mandatory or permissive. Permissive clauses merely "authorize personal jurisdiction in a designated forum but do not prohibit litigation of covered claims elsewhere," while mandatory clauses dictate "the exclusive forum for litigation." Kress Stores, 30 F.4th at 103 (internal quotation marks and citations omitted). This inquiry usually hinges on whether the provision includes any terms with a mandatory connotation, such as "shall." See Haddock-Acevedo v. Bd. of

<u>Governors of Univ. of Puerto Rico</u>, 2022 WL 2704507, at *3 (D.P.R. 2022) (collecting cases).

The forum selection provision in the case at bar is clearly mandatory. It expressly states that any proceeding related to the Agreement "**shall** be carried out **exclusively** in the state courts of the Commonwealth of Puerto Rico." (Docket No. 23-2 at 3) (emphasis added). Thus, absent a waiver, this clause requires the parties to litigate the covered claims exclusively in the state courts of the Commonwealth of Puerto Rico. *See* <u>Kress Stores</u>, 30 F.4th at 103.

**B. The Forum Selection Clause Covers This Action**

The forum selection clause in the Agreement is also broad. It states that any proceeding "**related to**" the Agreement "shall be carried out exclusively in the state courts of the Commonwealth of Puerto Rico." (Docket No. 23-2 at 3) (emphasis added). As this Court recently explained, First Circuit precedent dictates that "'related to' should be read broadly to mean 'connected by reason of an established or discoverable relation.'" <u>Haddock-Acevedo</u>, 2022 WL 2704507, at *4 (citing <u>Huffington v. T.C. Grp., LLC</u>, 637 F.3d 18, 22 (1st Cir. 2011)). Plaintiff's action, which seeks to recover for injuries sustained while riding Defendants' zipline, is undoubtedly "connected by reason of an established or discoverable relation" to a waiver Plaintiff signed in which she agreed to hold Defendants harmless for certain injuries she may sustain while riding the zipline. Given this comprehensive

language, the Court finds that this action falls within the clause's broad scope.

## C. The Forum Selection Clause Was Not the Product of Fraud and Its Enforcement Would Not Be Unreasonable

Having determined that the forum selection clause is mandatory and covers Plaintiff's claims, "the final step in evaluating the clause involves asking whether there is some reason the presumption of enforceability should not apply." Claudio-De Leon, 775 F.3d at 48 (internal quotation marks and citation omitted). Because forum selection clauses are *prima facie* valid and enforceable, the Court will not set this clause aside absent a "strong showing" from Plaintiff that it is unreasonable under the circumstances. Id. The First Circuit has made clear that "the party resisting enforcement bears the **'heavy burden'** of demonstrating why the clause should not be enforced[.]" Huffington, 637 F.3d at 23 (citation omitted) (emphasis added). Parties generally may challenge the enforceability of a forum selection clause on four grounds:

> (1)  the clause was the product of fraud or overreaching;
>
> (2)  enforcement would be unreasonable and unjust;
>
> (3)  proceedings in the contractual forum will be so gravely difficult and inconvenient that the party challenging the clause will for all practical purposes be deprived of his day in court; or

> (4) enforcement would contravene a strong
> public policy of the forum in which suit
> is brought, whether declared by statute
> or by judicial decision.

Claudio-De Leon, 775 F.3d at 48-49 (internal quotation marks and citation omitted). Here, Plaintiff does not contend that proceedings in the contractual forum will be gravely difficult and inconvenient or that enforcement of the forum selection clause would contravene a strong public policy of Puerto Rico. Thus, the Court will focus its analysis on the first two grounds – whether the clause was the product of fraud and whether its enforcement would be unreasonable and unjust.

### 1. The Clause Was Not the Product of Fraud

In general, a contract is unenforceable "if a party's manifestation of assent is induced by either a fraudulent or material misrepresentation by the other party upon which the recipient is justified in relying." Centro Medico de Turabo, 575 F.3d at 20 (internal quotation marks and citation omitted). To meet her "heavy burden of demonstrating why the [forum selection] clause should not be enforced" here, Plaintiff must do more than show that the Agreement was induced by fraud. Huffington, 637 F.3d at 23. She must make "a **focused showing** . . . that the inclusion **of [the forum selection clause]** was the product of fraud or coercion." Id. at 24 (internal quotation marks and citation omitted) (emphasis added). Plaintiff admits in her brief that she

is not attempting to make this "focused showing." Instead, she
contends that "[t]he Defendants purposely concealed **the entire
terms and conditions** of the document[.]" (Docket No. 28 at 14)
(emphasis added). Therefore, Plaintiff fails to meet her heavy
burden of showing why the inclusion of this forum selection clause
was the product of fraud. Nonetheless, as explained below,
Plaintiff's more general allegations of fraudulent concealment of
the entire Agreement are insufficient as well.

*a. There Was No Fraudulent Concealment*

Plaintiff primarily contends that the forum selection clause
in the Agreement is unenforceable because the Toro Verde park
employee fraudulently concealed all of its terms by showing her
only the signature page of the Agreement and not providing her a
chance to read the entire contract. (Docket No. 28 at 10) ("Knowing
that the Document had four pages filled with terms and conditions,
the park employee purposely chose to show Plaintiff only the very
last page which has basically no information on it."). Her analysis
revolves around the two-prong "reasonable communicativeness" test,
which she asserts is the governing test for fraudulent concealment
of a contractual provision under First Circuit precedent. Id. at
13-14 (citing, *inter alia*, Shankles v. Costa Armatori, S.P.A., 722
F.2d 861 (1st Cir. 1983)). Under that test, to determine whether
a contractual provision has been "reasonably communicated" to one
of the contracting parties, rendering it enforceable, a court must

examine both (1) the facial clarity of the contract and (2) scrutinize the circumstances of the plaintiff's "possession of and familiarity with the" contract. Lousararian v. Royal Caribbean Corp., 951 F.2d 7, 8-9 (1st Cir. 1991) (citing Shankles, 722 F.2d at 865-66). The inquiry into the second prong "does not depend upon *actual* knowledge of the terms in the contract of passage, but focuses instead on the *opportunity* for such knowledge. Id. at 11 (emphasis in original).

However, courts have noted that "the 'reasonable communicativeness' standard, and the accompanying two-part analysis described in Shankles, is the standard applicable to suits in admiralty subject to a special one-year statute of limitations." Noel v. Walt Disney Parks & Resorts U.S., Inc., 2011 WL 1326667, at *7 (D. Mass. 2011) (citing Muratore v. M/S Scotia Prince, 845 F.2d 347, 350-51 (1st Cir. 1988)). Therefore, "[a]lthough Shankles and its progeny are relevant to the Court's consideration of reasonableness . . . they are not controlling." Id. Nevertheless, Plaintiff's arguments are unpersuasive whether analyzed under the Shankles test or not, because Plaintiff had plenty of opportunity to learn of the terms in the Agreement.[4]

---

[4] It is worth noting that, although Plaintiff cites four cases for the proposition that "[a] forum selection clause is invalid and unenforceable if [it] is concealed by one party," none of those cases actually held that the forum selection clause at issue was fraudulently concealed. (Docket No. 28 at 10) (citing Cheney v. IPD Analytics, LLC, 583 F. Supp. 2d 108, 118 (D.D.C. 2008); 2215 Fifth St. Assocs., LP v. U-Haul Int'l, Inc., 148 F. Supp. 2d 50, 55 (D.D.C. 2001); Hunter Distributing Co., Inc. v. Pure Beverage Partners, 820 F. Supp. 284, 286-87 (N.D. Miss. 1993); Hartash Constr., Inc. v. Drury Inns, Inc.,

Plaintiff primarily contends that the forum selection clause was fraudulently concealed from her because she had "no opportunity whatsoever to become familiar with the terms of the" Agreement. (Docket No. 28 at 14). However, the undisputed facts in the record show that Plaintiff simply made no effort to and had no interest in becoming familiar with the terms, including the forum selection clause.

First, the express language of the Agreement put Plaintiff on notice that she was agreeing to specific terms and conditions by signing the tablet. The last page of the Agreement – which Plaintiff admits she saw – stated, in capital letters just above the space for Plaintiff's signature: "BY MY SIGNATURE I CERTIFY THAT I HAVE READ AND UNDERSTOOD THIS DOCUMENT IN ITS ENTIRETY. I AM AWARE OF THE RISKS I AM ASSUMING AND THE RIGHTS I AM WAIVING, AND I ACCEPT THIS AGREEMENT IN ITS ENTIRETY VOLUNTARILY AND WITHOUT OBJECTION OR LIMITATION." (Fact ¶ 17). Plaintiff's argument that, "as a lay person, she had no reason to believe there were three other pages with additional terms and conditions" is unpersuasive. (Docket No. 27 ¶ 13). Even a lay person with no legal training or experience would understand that this clause meant there was more to the document than just a signature page. Plaintiff had express

---

2000 WL 1140498, at *6 (E.D. La. 2000)). In fact, Plaintiff's cited cases highlight the weaknesses in her own arguments regarding fraudulent concealment and underscore her heavy burden in seeking to invalidate this forum selection clause on that basis.

notice that she was agreeing to certain terms and waiving certain rights and chose not to inquire further about those terms or rights before providing her signature. That is not fraudulent concealment.

Second, the undisputed facts in the record belie Plaintiff's assertion that a Toro Verde employee rushed her to sign the Agreement before she could read it. As an initial matter, Plaintiff admitted at her deposition that she signed the Agreement not because any park employees told her to, but because *her own brother* told her to. (Fact ¶ 20). Additionally, Plaintiff's deposition testimony evinces that she signed the Agreement without reading it because of her niece, not a park employee. She explained during her deposition that she agreed to watch her niece while her brother handled the ticketing and paperwork at the park. (Fact ¶ 4). She also described how hyperactive her niece was that day and how that responsibility involved taking her niece to various places on the Toro Verde property. (Fact ¶ 5). When Plaintiff's brother called her over to sign the Agreement, she was in the process of taking her niece to the restroom. (Facts ¶¶ 13, 21). These undisputed facts show that Plaintiff rushed to sign the Agreement because she had to keep up with her hyperactive niece who had to use the restroom. More importantly, in no way do they support the conclusion that the Toro Verde employee purposefully rushed

Plaintiff into signing the Agreement so that she could not read it in its entirety.

In fact, the only averment in the summary judgment record before the Court that indicates park employees rushed patrons to sign the Agreement can be found in Plaintiff's brother's affidavit. The affidavit states that "[t]he lady with the tablet was hurrying people on the line, including myself, to sign the document because our group was behind schedule to go on the zipline tour." (Docket No. 15-2 ¶ 6). That single declaration does not even discuss whether Plaintiff herself was rushed to sign the Agreement and does not undermine Plaintiff's own admissions in her deposition to the contrary.

Third, it is well established that Defendants had no affirmative duty to explain the significance of the forum selection clause to Plaintiff before she signed the Agreement. The First Circuit rejected a very similar argument in Centro Medico de Turabo, ruling that "the absence of an explanation about the significance of [a] forum selection clause . . . cannot serve as a basis for a misrepresentation claim[.]" 575 F.3d at 20. Therefore, even though Plaintiff is a "lay person" with no legal background, the Court will not invalidate this clause in an agreement Plaintiff voluntarily signed simply because the employee did not highlight and explain its significance to her.

Finally, the Court disagrees with Plaintiff's contention that the "issue of whether or not [she] was given an opportunity to inspect the whole document is an issue of credibility" that must be left to a jury. (Docket No. 28 at 11). As discussed, the record establishes that Plaintiff signed the Agreement because her brother told her to, and that she made no attempt to read the Agreement or inquire about its terms. The record also lacks any evidence that Plaintiff was rushed by Toro Verde employees, and in fact evinces that Plaintiff was rushed by her own niece and brother. There are no credibility issues at play that must be left to a jury. The terms of the Agreement simply were not fraudulently concealed from Plaintiff.

    2. <u>Enforcement of the Clause Would Not Be Unreasonable and Unjust</u>

The Court also finds that it would not be unreasonable or unjust to enforce the forum selection clause against Plaintiff. Her contentions to the contrary can be grouped into two categories, each of which is addressed in turn below.

    *a. Enforcement of the Clause, Which Was Provided After Payment but Before Plaintiff Went on the Zipline, is not Unreasonable or Unjust*

Plaintiff first asserts that the forum selection clause is unenforceable because she was asked to sign the Agreement after paying to ride the zipline. (Docket No. 28 at 17). She cites three cases that supposedly establish that "when [a] forum selection

clause is provided after the defendant has charged for its product
or service, the forum selection clause will be rendered
unenforceable." Id. at 16. After reviewing the unpublished and
nonbinding cases Plaintiff relies on, the Court is not persuaded
that the reasoning underlying those cases is applicable here.
Plaintiff primarily relies on Flowserve Corp. v. Hallmark Pump
Co., 2010 WL 2232285 (S.D. Tex. 2010) and Larsen v. Kerzner Int'l
Hotels Ltd., 2009 WL 1759585 (S.D. Fla. 2009), two cases where a
district court held that it would be unreasonable to enforce a
forum selection clause because the plaintiffs did not know about
or have any reason to inquire about it before using the defendants'
services.[5] In Flowserve, the court found that "at no point" did
the defendant's representative "even mention that there existed
terms and conditions in a service agreement that affected [the
plaintiff's] rights" before the plaintiff entered into a contract
with the defendant. 2010 WL 2232285, at *3. And in Larsen, the
plaintiff "never received, read, or acknowledged the forum
selection clause at any time prior to or during her stay at" the
defendant's property. 2009 WL 1759585, at *6.

In this case, Plaintiff was presented with the Agreement
before she went on the zipline ride. Plaintiff does not allege
that she was contractually obligated to ride the zipline upon

---

[5] The third case, Terrebonne v. Commodore Cruise Lines Ltd., 1993 WL 534051
(E.D. La. 1993), will not be discussed at length because it applied federal
maritime law, which is inapplicable in this case. Id. at 1.

payment or that she had no legitimate alternative to taking the
ride. *Compare* Montoya v. CRST Expedited, Inc., 285 F. Supp. 3d
493, 498 (D. Mass. 2018) (declining to enforce forum selection
clause in part because, "if [the plaintiff] declined to sign, he
would have been stranded in Iowa without bus fare home and with a
debt of $2,000") *with* Centro Medico de Turabo, 575 F.3d at 22
(enforcing forum selection clause in part because hospital patient
"had the option of going to another hospital"); *see also* Fact ¶ 25.
Instead, she could have sought a refund if she read the Agreement
and took issue with its terms. While Flowserve and Larsen would
have been more analogous had Plaintiff been asked to agree to the
forum selection clause after riding the zipline, that is not the
case. In summary, it is not unreasonable to enforce this forum
selection clause against Plaintiff even though she did not see the
Agreement until after her brother paid her park admission fee.

> *b. The Forum Selection Clause is Clearly Written in
> a Language Plaintiff Understands*

Additionally, while Plaintiff does not expressly argue that
enforcement of the clause is unreasonable due to the fact that it
was presented only in Spanish, Plaintiff does mention that the
Agreement was in Spanish and that English is her "primary
language." (Docket Nos. 1 at 4-5; 15-1 ¶ 15). However, as set forth
in the Findings of Fact, the record establishes that Plaintiff
understands Spanish and, after seeing that the Agreement was in

Spanish, she did not ask for an English copy. (Facts ¶¶ 23, 24).
Additionally, Plaintiff concedes that the wording of the forum
selection clause is "quite clear." (Docket No. 28 at 14).
Therefore, the Court concludes that, had Plaintiff read the
Agreement before signing it, she would have understood the forum
selection clause. Thus, nothing about the way the clause is written
warrants a finding that its enforcement is unreasonable or unjust.

Further, even if Plaintiff had some difficulty understanding
the Agreement in Spanish, the First Circuit has adopted the
"general and well established principle of contract law that one
who is ignorant of the language in which a document is written, or
who is illiterate, may be bound to a contract by negligently
failing to learn of its contents." Soto v. State Indus. Prod.,
Inc., 642 F.3d 67, 78 (1st Cir. 2011) (internal quotation marks
and citations omitted). As discussed, the undisputed facts show no
sign of fraud by Defendants, and Plaintiff's unawareness of the
forum selection clause is attributable to her own failure to learn
of the Agreement's contents. Thus, the fact that she may not have
fully understood the Agreement due to translation issues, "of which
she was aware, does not render void her" consent to the forum
selection clause. Id.

### 3. Conclusion On Presumption of Enforceability

Plaintiff ultimately fails to carry her heavy burden of
establishing that the presumption of enforceability for this forum

selection clause should not apply. She was asked – not forced – to sign a waiver before participating in an admittedly risky activity. While the environment was hectic, her deposition testimony reveals that her decision not to read the Agreement stemmed from her trust in her brother and the actions of her own niece, not the actions of the park employees. There is no genuine dispute of material fact concerning the absence of fraud or unfairness that would bar the enforcement of this forum selection clause.

### VI.   CONCLUSION

For the foregoing reasons, this case is **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE.** Plaintiff may refile this action in the court specified in the forum selection clause. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of January 2023.

S/RAÚL M. ARIAS-MARXUACH
UNITED STATES DISTRICT JUDGE